UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————

№ 05-CV-0813 (JFB) (RLM)

———————————————

NOUVEAU ELEVATOR INDUSTRIES, INC.,

Plaintiff,

VERSUS

CONTINENTAL CASUALTY INSURANCE COMPANY,
ALSO KNOWN AS CNA,

Defendant.

———————————————

MEMORANDUM AND ORDER
June 21, 2006

———————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff, Nouveau Elevator Industries, Inc., brought this action against defendant, Continental Casualty Insurance Company, under this Court's diversity jurisdiction, seeking a declaratory judgment that defendant is obligated to defend or indemnify plaintiff with respect to a personal injury suit brought in state court. Plaintiff also seeks monetary damages on a pendent claim alleging that defendant denied insurance coverage in bad faith. The parties have cross-moved for summary judgment. Finding that a disputed issue of material fact exists as to whether the plaintiff received actual notice of the state lawsuit, a condition precedent to coverage under the policy at issue, the Court denies both parties' motions for summary judgment with respect to the declaratory judgment claim. With respect to the bad faith denial of coverage claim, defendant's motion for summary judgment is granted.

I. BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff, Nouveau Elevator Industries, Inc. ("Nouveau"), installs, services, and repairs elevators for customers in the New York metropolitan area. (*See* Declaration of William Wetzel ("Wetzel Decl."), ¶ 2.) On January 26, 2001, Hugh Douglas and Gloria Douglas filed a complaint against Nouveau in New York State court,[1] which alleged that Hugh Douglas suffered personal injuries on January 29, 1998, as a result of a malfunctioning elevator at Beth Israel Medical Center, which Nouveau is alleged to have negligently serviced (*See* Wetzel Decl. ¶ 5; Wetzel Decl. Ex. B.).

———

[1] The underlying action was filed in the Supreme Court for the State of New York, County of Kings, under the caption *Hugh Douglas, et al. v. Nouveau Elevator Industries, Inc.*, Index. No. 3290/01. It is hereinafter referred to as the "*Douglas* action."

At the time of the alleged injury to Douglas, plaintiff was covered by a commercial general liability policy issued by the defendant, Continental Casualty Insurance Company ("CNA"). (*See* Wetzel Decl. Ex. A.). The policy, number 161912330, contained a notice provision, which contains the following notice requirements:

> b. If a claim is made or a "suit" is brought against any insured, you must:
>
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
>
> (2) Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c. You and any other involved insured must:
>
> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> . . .

(*See* Wetzel Decl. Ex. A, § IV(2).)

The parties do not dispute that neither Douglas, his counsel, nor Beth Israel Medical Center directly contacted and advised Nouvaeu of the accident, his alleged injuries, or the Complaint at the time that the *Douglas* suit was filed. (*See* Plaintiff's 56.1 Statement, ¶ 9.)[2] Rather, on May 18, 2001, in accordance with the dictates of N.Y. Bus. Corp. Law § 306(b)(1), the Summons and Complaint in the *Douglas* action were served on the New York State Secretary of State, who was designated in Nouveau's Certificate of Incorporation as their agent for service of process. (*See* Declaration of Stuart C. Levene ("Levene Decl.") Ex. D, ¶ 5.) The Secretary of State then mailed the process to the address set forth in Nouveau's Certificate of Incorporation for receipt of process served on the Secretary of State,[3] which was the address of Nouveau's counsel, Diamond & Fulco. (*See* Defendant's 56.1 Statement, ¶ 5.) However, at some point prior to that date, Diamond & Fulco changed their address, and Nouveau had failed to update this address with the Secretary of State. (*See id.,* ¶¶ 6-7.) The envelope containing the process was returned by the U.S. Post Office, marked, "MOVED - NOT FORWARDABLE." (*See* Wetzel Decl. Ex. D.) Nouveau claims that, at the time of attempted service, they were not aware of the fact that their counsel's address on file with the Secretary of State had not been updated. (*See* Wetzel Decl. ¶ 8.)

According to the affidavit of Harvey Sorid, the plaintiff's attorney in the *Douglas* action, he mailed a copy of the Summons and

---

[2] Where only one Rule 56.1 statement is cited in this opinion, the opposing party admitted the specific allegation in their response.

[3] The Certificate of Incorporation listed the following address:

> Nouveau Elevator Industries, Inc.
> c/o Diamond & Fulco
> 665 Third Avenue, Rm. 1600
> New York, NY 10017

(*See* Levene Decl. Ex. D, ¶ 5.)

2

Complaint directly to Nouveau on January 29, 2002. (*See* Levene Decl. Ex. I, Ex. J at 131-32.) Nouveau claims that it never received this mailing. (*See* Wetzel Decl. ¶ 12.)

During the pendency of the *Douglas* action, Mr. Sorid was litigating another case against Nouveau, *Brenda Lanclos v. Nouveau Indus., Inc,* Index. No. 1117/01 (N.Y. Sup. Ct., Kings Co.) (hereinafter referred to as the "*Lanclos* action"). (*See* Wetzel Decl. ¶ 11; Declaration of Daniel I. Goldberg ("Goldberg Decl.) Ex. B.) In the *Lanclos* action, Nouveau was represented by White Fleischner & Fino, LLP, who was retained pursuant to insurance coverage provided by CNA. (*See* Goldberg Decl. ¶¶ 7-8; Goldberg Decl. Ex. B.) Mr. Sorid testified that, during the course of the action, he mentioned to defense counsel that he had served the Secretary of State in the *Douglas* action and had not received an answer from Nouveau. (*See* Goldberg Decl. Ex. A at 64-69.)

On June 30, 2004, the plaintiffs in the *Douglas* action moved for a default judgment against Nouveau. (*See* Levene Decl. Ex. K.) According to the affirmation attached to the motion, the Notice of Default was served by mail directly upon Nouveau at its business address on June 29, 2004.[4] (*See id.*) Notice of the motion was served upon Nouveau on June 29, 2004. (*See* Defendant's 56.1 Statement, ¶ 11.) On August 12, 2004, Nouveau gave notice of the *Douglas* action and the motion for default judgment on its insurance broker. (*See* Defendant's 56.1 Statement, ¶ 12.) CNA was notified the next day, and denied coverage for the claims, based on untimely notice, by letter dated August 26, 2004. (*See* Levene Decl. Ex. N.) CNA's letter specifically provided:

> It is the position of [CNA] that Nouveau Elevator Industries, Inc. (NEI) has violated the CONDITIONS of their policy by their failure to timely notify [CNA] regarding service of this Summons & Complaint on May 18, 2001 via the Secretary of State. Even after NEI was served with Notice of Motion for Default on January 7, 2002, NEI still failed to notify [CNA] of this matter. Service upon the Secretary of State is service upon NEI, in both instances. It is incumbent upon NEI to see that the Secretary of State has a record of NEI's current mailing address.

(*See* Levene Decl. Ex. N.)

Nouveau filed the instant action, seeking a declaratory judgment that the defendant is obligated to defend or indemnify plaintiff with respect to the *Douglas* action. Nouveau also seeks damages on its claim that CNA denied coverage in bad faith. The parties have cross-moved for summary judgment.

II. APPLICABLE LAW

A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)*; Globecon Group, LLC v. Hartford Fire Ins.*

---

[4] Nouveau claims that it did not receive the Notice of Default until August 2004. (*See* Wetzel Decl., ¶¶ 13-14.)

3

*Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (stating that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "[W]hen the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005).

B. New York Insurance Law

"Under New York law, a court must give unambiguous provisions of insurance contracts their plain and ordinary meaning." *U.S. Underwriters Ins. Co. v. Congregation B'nai Israel*, 900 F. Supp. 641, 644 (E.D.N.Y. 1995), *aff'd* 101 F.3d 685 (2d Cir. 1996); *see also Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999); *Hiraldo v. Allstate Ins. Co.,* 8 A.D.3d 230, 231 (2d Dep't 2004). The language of a contract or an insurance policy is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978). Although coverage is not to be afforded for liability for which insurance has not been purchased, *see Tartaglia v. Home Ins. Co.*, 240 A.D.2d 396, 397 (2d Dep't 1997), ambiguous terms in an insurance policy are to be interpreted against the insurer and in favor of coverage for the insured. *See U.S. Fid. & Guar. Co. v. Annunziata,* 67 N.Y.2d 229, 232 (N.Y. 1986); *see also Miller v. Cont'l Ins. Co.,* 40 N.Y.2d 675, 678 (N.Y. 1976). "If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Inc. Vill. of Cedarhurst v. Hanover Ins. Co.,* 89 N.Y.2d 293, 298 (N.Y. 1996) (internal quotation omitted). Further, in order to avoid an obligation to defend an insured on the basis of a policy exclusion, an insurer must demonstrate that "the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Id.*

III. DISCUSSION

The parties' moving papers focus on two issues: (1) whether or not a declaratory judgment should issue, stating whether CNA was entitled to deny coverage based on untimely notice; and (2) whether summary judgment should be granted to dismiss Nouveau's claim of bad faith denial of coverage. The Court addresses each in turn.

A. Denial of Coverage for Untimely Notice

CNA asserts that it properly denied coverage because Nouveau failed to give timely notice of the *Douglas* action, in contravention of the notice provision in the policy.

Under New York law, an insured's failure to comply with a policy's notice provision violates a condition precedent to coverage, and relieves an insurer of an obligation to defend or indemnify the insured. *See Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 339 (N.Y. 2005); *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.,* 822 F.2d 267, 271 (2d Cir. 1987) ("Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy."). Notice must be provided to the insurer within a reasonable amount of time in view of the facts and circumstances. *See Sayed v. Macari*, 296 A.D.2d 396, 397 (2d Dep't 2002); *see also Travelers Indem. Co. v. Worthy*, 281 A.D.2d 411 (2d Dep't 2001). "Late notice is a complete defense whether or not the insurance company was prejudiced by the delay." *Olin Corp. v. Ins. Co. of N. Am.*, 743 F. Supp. 1044, 1053 (S.D.N.Y. 1990) (citing *Utica Mut. Ins. v. Fireman's Fund Ins. Cos.,* 748 F.2d 118, 121 (2d Cir. 1984)); *Ogden Corp. v. Travelers Indem. Co.,* 739 F. Supp. 796 (S.D.N.Y.1989)).[5] The burden of establishing that a delay was not unreasonable falls upon the insured. *See Argo Corp.,* 4 N.Y.3d at 340 (citing *U.S. Underwriters Ins. Co. v A & D Maja Constr., Inc.*, 160 F. Supp. 2d 565, 569 (S.D.N.Y. 2001)).

As previously stated, the applicable insurance agreement contained a notice provision, which required that Nouveau inform CNA of any claim or lawsuit brought against them "as soon as practicable." (*See* Wetzel Decl. Ex. A, § IV(2).) The parties do not dispute this, nor the fact that the New York Secretary of State was properly served with the complaint in the *Douglas* action as of May 18, 2001, and that this notice was not properly forwarded to Nouveau because Nouveau had failed to update its address with the Secretary of State. (*See* Defendant's 56.1 Statement, at ¶¶ 3-8.) The parties diverge, however, as to the effect of the May 18, 2001 service upon the Secretary of State. CNA contends that service upon the Secretary of State, as Nouveau's designated agent for service of process, was sufficient to trigger their duty to inform CNA of the lawsuit under the notice provision of the policy. Nouveau, on the other hand, contends that they had no such duty to notify CNA because they lacked actual notice of the *Douglas* action.

Under New York law, it is plain that Nouveau had constructive notice of the *Douglas* action as of the date that the

---

[5] In *Argo Corp.,* 4 N.Y.3d at 340, the New York Court of Appeals recently explained the rationale of the no prejudice rule:

> The rationale of the no-prejudice rule is clearly applicable to a late notice of lawsuit under a liability insurance policy. A liability insurer, which has a duty to indemnify and often also to defend, requires timely notice of lawsuit in order to be able to take an active, early role in the litigation process and in any settlement discussions and to set adequate reserves. Late notice of lawsuit in the liability insurance context is so likely to be prejudicial to these concerns as to justify the application of the no-prejudice rule.

5

Summons and Complaint were served upon the Secretary of State. It is uncontested that the Secretary was Nouveau's agent for service of process. N.Y. BUS. CORP. LAW § 304(a)(1) (McKinney 2006) ("The secretary of state shall be the agent of every domestic corporation . . . upon which process against the corporation may be served.").[6] As Nouveau's agent for service of process, it is a well-settled principle of agency law that knowledge that the Secretary of State acquired within the scope of that duty–which includes knowledge of the existence of the *Douglas* action–was imputed to Nouveau, regardless of whether or not the information was ever actually communicated. *N.Y. Mar. & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001) ("Under New York law, knowledge acquired by an agent acting within the scope of its agency is imputed to the principal, even if the information was never actually communicated.") (citing *Christopher S. v. Douglaston Club*, 275 A.D.2d 768, 769 (2d Dep't 2000)); *Center v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 784 (N.Y. 1985) ("The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it."). A central issue in this case thus boils down to whether or not Nouveau's constructive notice of the *Douglas* action to the Secretary of State was sufficient to trigger their duty to notify CNA under the terms of the policy.

The Court begins its inquiry with the plain language of the insurance contract to determine whether it provides instruction as to the issue of whether actual or constructive notice is required to trigger the duties under the notice of claim provision. *Andy Warhol Found. for Visual Arts,* 189 F.3d at 215 ("If the language of the insurance contract is unambiguous, we apply its terms."). The Court finds that the plain language of the policy is ambiguous. Although the policy instructs the insured to provide notice of any claim or suit "as soon as practicable," it contains no indication as to when this duty is triggered. (*See* Wetzel Decl. Ex. A, § IV(2).) Similarly, although the policy demands that the insured "immediately forward copies of any papers received" in connection with any claim or lawsuit filed against the insured, it contains no indication of whether the duty is triggered when it is actually received by the corporation, or constructively received by the corporation through the Secretary of State as its agent for service of process. (*See id.*) The Court finds that the plain terms of the policy are reasonably susceptible to multiple interpretations, supporting either actual or constructive notice as a triggering event to the notice of claim provision.

Notwithstanding the ambiguity on this issue when reading the plain terms of the policy, CNA argues that the policy is not ambiguous when it is read in light of New York law, which has found this form of constructive notice binding on corporate defendants in the default judgment context, where the excuse for failing to receive actual notice is a mistake in failing to maintain a current address on file with the Secretary of State. Specifically, CNA references N.Y. C.P.L.R. § 5015(a), which allows a party to vacate a default judgment where there is a valid excuse for non-receipt of the summons and complaint. *See, e.g., Spearman v. Atreet Corp.*, 238 A.D.2d 194 (affirming vacatur of

---

[6] Nouveau also designated the Secretary of State as its agent for service of process in its Certificate of Incorporation. (*See* Declaration of Stuart C. Levene ("Levene Decl.") Ex. D, ¶ 5.)

default judgment where defendant's lack of actual notice was reasonably excused by the fact that the complaint and summons contained the wrong address). Under § 5015(a), courts have consistently held that a failure to notify the Secretary of State of a new address for service of process does not constitute a reasonable excuse for the purpose of vacating a default judgment.[7] In *26 Warren Corporation v. Aetna Casualty & Surety Company,* 253 A.D.2d 375, 375-76 (1st Dep't 1998), the court cited this particular line of cases under § 5015(a) in support of its finding that an insurance notice of claim provision was triggered, despite the defendant's excuse that it did not have notice because they failed to maintain an updated address with the Secretary of State.

The Court does not find CNA's argument compelling because it fails to take into account the entire landscape of New York law with regards to the vacatur of default judgments. Under a separate provision, N.Y. C.P.L.R. § 317, a party may vacate a default judgment within one year of the default upon a finding of the court that the defendant did not personally receive notice of the summons in time to defend, and has a meritorious defense. *See, e.g., N.Y. and Presbyterian Hosp. v. Allstate Ins. Co.,* __ N.Y.S.2d __, 2006 WL 1492451, at *1 (N.Y. App. Div.–2d Dep't May 30, 2006). Under § 317, excuse is not an element, and it is well-settled that, if the other requirements of the provision are met, a default judgment may be vacated notwithstanding the reason that the corporation did not receive actual notice is the fact that the corporation failed to maintain an updated address with the Secretary of State. *Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co., Inc.,* 67 N.Y.2d 138, 142 (1986) ("[C]orporate defendants served under Business Corporation Law § 306 have frequently obtained relief from default judgments [pursuant to N.Y. C.P.L.R. § 317] where they had a wrong address on file with the Secretary of State, and consequently, did not receive actual notice of the action in time to defend.") (collecting cases); *see also Calderon v. 163 Ocean Tenants Corp.,* 27 A.D.3d 410, 410-11 (2d Dep't 2006) (vacating default under § 317 where corporate defendant did not receive actual notice of suit because it was only served on Secretary of State and evidence demonstrated that corporation did not otherwise receive actual notice of the suit); *cf. Argo Corp. v. Greater N.Y. Mut. Ins. Co.,* 1 A.D.3d 264, 265 (1st Dep't 2003) (implying that insured could overcome failure to comply with policy's notice provision by demonstrating no actual notice, despite service on Secretary of State),

---

[7] *Westinghouse Elec. Corp. v. Penfield Indus. & Tech, Inc.,* No. 87-CV-9219 (MJL), 1989 U.S. Dist. LEXIS 9104, at *8 (S.D.N.Y. Aug. 4, 1989) ("Failure to apprise the secretary of state of a change of address does not invalidate service of process."); *Santiago v. Sansue Realty Corp.,* 243 A.D.2d 622, 623 (2d Dep't 1997) ("It is well settled that 'a corporate defendant's failure to receive copies of process served upon the Secretary of State due to a breach of its obligation to keep a current address on file with the Secretary of State does not constitute a reasonable excuse for its delay in appearing and answering the complaint."); *FGB Realty Advisors v. Norm-Rick Realty Corp.*, 227 A.D.2d 439, 439-40 (2d Dep't 1996) (stating that a failure to notify Secretary of State of change of address "is a breach of the corporate defendant's responsibility" which "does not constitute a reasonable excuse for purposes of vacating a default judgment"); *Boss v. Avoxe Corp.,* 97 A.D.2d 601 (3d Dep't 1983) ("[D]efendant was obligated to keep a current address on file with the Secretary of State and thus its failure to receive copies of process served upon the Secretary of State does not provide a 'reasonable excuse' for purposes of vacating the default.").

*aff'd* 4 N.Y.3d 332 (2005).

Further, this case is distinguishable from *26 Warren Corp.* because of a critical distinction in the language of the policy at issue. According to the brief opinion of the Appellate Division in *26 Warren Corp.*:

> The subject insurance policy's notice of claim condition precedent to coverage, that "the insured shall immediately forward to the [insurer] every demand, notice, summons or other process received by him or his representative," is devoid of ambiguity, and the receipt of service of the summons and complaint by the Secretary of State, as plaintiff's designated agent, constituted receipt by a representative within the meaning of the policy.

253 A.D.2d at 375-76 (internal citations omitted). *26 Warren Corp.* explicitly emphasized that the policy phrase "or his representative" was the term by which receipt by the Secretary of State triggered the duty to notify the insurance company, and that phrase is noticeably absent from the policy in the instant case. *Id.*

In sum, the Court declines CNA's invitation to cherry-pick provisions of the C.P.L.R., on the issue of service of process and default judgments, to discern the meaning of the policy provision in this case on the issue of notice. Rather, the Court focuses upon the fact that the plain language of the term at issue is reasonably susceptible to more than one interpretation, and thus concludes that it is ambiguous as to the issue of the form of notice required to trigger the notice of claim provision. That conclusion regarding the provision's ambiguity is unaffected by reference to agency law and service of process/default provisions of the C.P.L.R. *See Haber v. St. Paul Guardian Ins. Co.,* 137 F.3d 691, 695 (2d Cir. 1998); *see also Hartford Ins. Co. v. Nationwide Mut. Ins. Co.,* 143 Misc.2d 897, 899, 542 N.Y.S.2d 920 (N.Y. Sup. Ct.-Onondaga Co. 1989) ("Neither the Uniform Commercial Code nor the Vehicle and Traffic Law are dispositive of the issue as to whether a repossessed vehicle is an owned vehicle within the terms of Hartford's policy. Rather, it is a matter of contract interpretation.").

Since the notice of claim provision is ambiguous, the Court may then look to any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract. *See Andy Warhol Found. for Visual Arts*, 189 F.3d at 215. When no extrinsic evidence is available, or where such evidence does not shed light upon the intent of the parties, a court must resort to *contra proferentem* canon of contract construction, and construe any ambiguities in the contract against the insurer as a matter of law. *See Morgan Stanley Group, Inc. v. New England Ins. Co.,* 225 F.3d 270, 279 (2d Cir. 2000).[8] Because the record before the Court

---

[8] *See also McCarthy v. Am. Int'l Group, Inc.,* 283 F.3d 121, 124 (2d Cir. 2002) ("New York follows the well established *contra proferentem* principle which requires that equivocal contract provisions are generally to be construed against the drafter.") (citations and quotations omitted); *Gen. Star. Indem. Co. v. Custom Editions Upholstery Corp.,* 940 F. Supp. 645, 655 (S.D.N.Y. 1996) ("If the extrinsic evidence does not yield a conclusive answer as to the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved in favor of the insured.") (citations and quotations omitted)*; U.S. Fid. & Guar. Co.,* 67

does not contain a scintilla of extrinsic evidence regarding the intent of the parties, the Court construes the ambiguity in favor of the insured and concludes, as a matter of law, that actual notice was required to trigger the notice of claim provision under the policy at issue in the instant case.[9]

Since it is undisputed that Nouveau did not obtain actual notice of the *Douglas* action from the May 18, 2001 mailing of the Summons and Complaint to the Secretary of State, the Court holds that it was insufficient to trigger Nouveau's duty to notify CNA under the terms of the policy. This, however, does not end the Court's inquiry, as CNA alternatively claims that Nouveau received actual notice of the lawsuit when a copy of the Summons and Complaint was allegedly mailed to them by the plaintiff's attorney in *Douglas*, Mr. Sorid, on January 29, 2002. If Nouveau received actual notice as a result of this mailing, the subsequent two and a half year delay before it provided written notification of the lawsuit to CNA would be unreasonable as a matter of law. *N.Y. Trans. Auth. v. Nat'l United Fire Ins. Co.,* 291 A.D.2d 213 (1st Dep't 2002) (holding that a 27 month delay was untimely as a matter of law); *see also Lukralle v. Durso Supermarkets, Inc.,* 238 A.D.2d 318, 319 (2d Dep't 1997) (holding that a 5 month delay was untimely as a matter of law); *see also DeLeon v. Motor Vehicle Accident Indemn. Corp.,* 243 A.D.2d 475, 476 (2d Dep't 1997) (holding that a 3 year delay was untimely as a matter of law). However, although such notice would be sufficient to trigger the notice of claim provision and justify Nouveau's decision to deny coverage under the policy, the Court notes that there is a disputed issue of fact as to whether Nouveau received the alleged mailing from Mr. Sorid. (*See* Wetzel Decl. ¶ 12.)

As a final note, Nouveau suggests that CNA should be estopped from denying coverage because they allege that CNA learned of the existence of the *Douglas* action prior to the point at which the plaintiffs in that case moved for a default judgment. Nouveau points to the testimony of Mr. Sorid, wherein he indicated that he orally informed outside counsel hired by CNA to defend the *Lanclos* action of the pendency of the *Douglas* action. (*See* Goldberg Decl. Ex. A at 64-69.) Nouveau contends that outside counsel had a duty to inform CNA of the action, which should have constituted adequate notice under the notification provision.

The Court rejects the argument that this alleged oral notification was sufficient to satisfy the requirements of the notification provision in the policy at issue. First, Nouveau has not cited any authority to support a contention that the outside counsel were under a duty to report the existence of the *Douglas* action to CNA. Rather, under New York law, an attorney retained by an insurance company to defend an insured has an attorney-client relationship with the

---

N.Y.2d at 232; *Miller,* 40 N.Y.2d at 678; *Penna v. Fed. Ins. Co.,* 28 A.D.3d 731, 732 (2d Dep't 2006) (noting that where insurance policy was reasonably subject to two interpretations, "[g]iven the rule that ambiguities in an insurance policy are to be construed against the insurer and in favor of the insured, the construction favoring the plaintiff prevails").

[9] *Barnhardt v. Hudson Valley Dist. Council of Carpenters Benefit Funds*, 114 A.D.2d 701, 702 (3d Dep't 1985) ("[W]here, as here, there is no indication of the existence of extrinsic evidence material to the resolution of the ambiguity, construction of the contract is a matter of law for the court.").

insured. *See Schneider v. Canal Ins. Co.,* No. 98-CV-5368 (JG), 1999 WL 689476, at *14 (E.D.N.Y. Sept. 1, 1999) ("It is also well-settled that the counsel retained by an insurance company to represent an insured has an attorney-client relationship *only* with the insured, *and owes its entire allegiance only to the insured.*") (emphasis added) (citing *Feliberty v. Damon*, 72 N.Y. 2d 112, 120 (N.Y. 1988)). Outside counsel was only under a duty to notify Nouveau. Moreover, assuming *arguendo* that outside counsel informed CNA regarding the *Douglas* action, New York courts have held that such oral notification from a party other than the insured insufficient to satisfy a notification clause. *See Travelers Ins. Co. v. Volmar Const. Co.,* 300 A.D.2d 40, 43 (1st Dep't 2002) ("The law is clear that an insured's obligation to provide timely notice is not excused on the basis that the insurer has received notice of the underlying occurrence from an independent source.").

In sum, the Court finds that the policy at issue required Nouveau to have actual knowledge of the *Douglas* action in order to trigger its duty to notify CNA of the lawsuit. On the record before the Court, the only juncture at which Nouveau may have possessed actual knowledge of the suit prior to June 29, 2004, was January 29, 2002, when Mr. Sorid allegedly mailed a copy of the Summons and Complaint to Nouveau. Since there exists a material issue of fact as to whether this mailing actually occurred, the Court denies both parties' motions for summary judgment on the declaratory judgment claim.

B. Bad Faith Denial of Coverage Claim

CNA argues that Nouveau's claim for bad faith denial of coverage must be dismissed because it is not cognizable under New York law.

CNA's position has merit; a host of courts have held that there is no separate, generalized tort claim for bad faith denial of insurance in New York. *See Cont'l Cas. Co. v. Nationwide Indem. Co.,* 16 A.D.3d 353, 355 (1st Dep't 2005) ("[T]here is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance policy.") (citing *Acquista v. N.Y. Life Ins. Co.,* 285 A.D.2d 73, 78 (1st Dep't 2001)); *Zawahir v. Berkshire Life Ins. Co.*, 22 A.D.3d 841, 842 (2d Dep't 2005) ("Assuming that the plaintiff intended to allege 'insurance bad faith,' he failed to state a cause of action, as there is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance contract.") (internal citations and quotations omitted); *Acquista*, 285 A.D.2d at 78-81 (discussing availability of bad faith denial of insurance tort cause of action in other states but concluding that recognizing such in New York "would constitute an extreme change in the law of this State"); *see also Polidoro v. Chubb Corp.*, 354 F. Supp. 2d 349, 352 (S.D.N.Y.2005) ("Plaintiff's claim for bad-faith conduct in handling insurance claims is not legally-cognizable under New York law."); *USAlliance Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*, 346 F. Supp. 2d 468, 470 (S.D.N.Y.2004) ("Plaintiff's claim for bad faith denial of coverage is crafted as an independent cause of action in its complaint but, as the Defendant correctly points out, an independent tort action for bad faith denial of insurance coverage is not recognized in New York.").[10]

---

[10] A claim for bad faith denial of coverage is available in more specific, limited circumstances which are not applicable to the instant case. For

Nouveau cites *New England Mutual Life Insurance Company v. Johnson*, 155 Misc. 2d 680, 683-84 (N.Y. Sup. Ct.–N.Y. Co. 1992) for the proposition that a party may seek damages for bad faith denial of coverage, but that case is distinguishable, as it only applies to the award of attorney's fees to an insured party involved in litigation against their insurer. With respect to insureds seeking attorney's fees based upon bad faith, there is a strong presumption in New York against a finding of bad faith liability by an insurer. *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624 (2d Cir. 2001) (citation omitted). Such fees may only be recovered where there is "more than an arguable difference of opinion between carrier and insured over coverage" and there is a showing of "such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *See Liberty Surplus Ins. Corp. v. Segal Co.,* 420 F.3d 65, 70 (2d Cir. 2005) (quoting *Sukup v. State*, 19 N.Y.2d 519, 522 (N.Y. 1967)). However, despite the fact that the Court agreed with Nouveau's position that the notice provision required actual notice, the Court also found that CNA's interpretation was reasonable, although it did not prevail upon the application of the *contra proferentem* canon of contract interpretation. Moreover, CNA had a reasonable factual basis to deny coverage, based on reliance upon Mr. Sorid's affirmation that he mailed the Summons and Complaint directly to Nouveau. On these facts, the Court finds that no reasonable trier of fact could determine that the dispute reflects anything more than an "arguable difference of opinion" rather than bad faith by the insurer, and so the bad faith denial of insurance claim fails as a matter of law. *See Liberty Surplus Ins. Co.*, 420 F.3d at 70 (affirming dismissal of bad faith claim for attorneys' fees where insurer had reasonable, albeit incorrect, basis for denying coverage); *see also Hugh Boss Fashions*, 252 F.3d at 625 (vacating award of attorneys' fees for bad faith denial of coverage where insurer had reasonable, albeit incorrect, basis for denying coverage).

IV. CONCLUSION

For the reasons stated above, both parties' motions for summary judgment on the declaratory judgment claim are DENIED. CNA's motion for summary judgment on the bad faith denial of coverage claim is GRANTED and, accordingly, that claim is dismissed.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: June 21, 2006
Brooklyn, New York

\* \* \*

The attorneys for the plaintiff are Daniel I. Goldberg, Esq., and John P. Fulco, Esq. of Salon Marrow Dyckman Newman & Broud, LLP, 292 Madison Avenue, New York, New York 10017. The attorneys for the defendant are Stuart C. Levene, Esq., and David A. Beke, Esq., of Ford Marrin Esposito Witmeyer & Gleser, LLP, Wall Street Plaza, New York, New York, 10005-1875.

---

example, courts have allowed a cause of action for bad faith refusal to accept a settlement offer, where they are already controlling defense of the case. *See, e.g., Greenidge v. Allstate Ins. Co.,* 446 F.3d 356, 361-62 (2d Cir. 2006); *see also Pavia v. State Farm Mut. Auto Ins. Co.,* 82 N.Y.2d 445, 452 (N.Y. 1993).